UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

AUTUMN L.,[1]

                                        Plaintiff,

    v.                                                                         8:24-CV-247
                                                                                (MJK)

LELAND DUDEK,
Acting Commissioner of Social Security,

                                        Defendant.
_____

MARK A. SCHNEIDER ESQ., for Plaintiff
VERNON NORWOOD ESQ., Special Asst. U.S. Attorney, for Defendant

MITCHELL J. KATZ, U.S. Magistrate Judge

**MEMORANDUM-DECISION AND ORDER**

Plaintiff commenced this action under the Social Security Act (42 U.S.C. § 405(g)) seeking judicial review of the Commissioner of Social Security's final decision denying her application for benefits. This matter was referred to me, for all proceedings and entry of a final judgment, under N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. 9). Both parties

_____

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

filed briefs. (Dkts. 11, 13, 14), which the Court treats as motions under Fed. R. Civ. P. 12(c), in accordance with General Order 18.

## I. PROCEDURAL HISTORY

On September 12, 2019, Plaintiff applied for Title II disability and Title XVI SSI benefits, alleging disability dating from March 25, 2019. (T. 22).[2] Plaintiff's applications were initially denied on December 26, 2019, and her request for administrative reconsideration was denied on August 18, 2020. (*Id.*). Plaintiff's subsequent request for a hearing was granted. (*Id.*). On February 8, 2023, Plaintiff, represented by non-attorney representative Mary Anne Lamica, and vocational expert Joesph Young testified, by online video, before Administrative Law Judge ("ALJ") Jade Mulvey. (*Id.*). The ALJ issued an unfavorable decision on March 2, 2023. (T. 19). Subsequently, the Appeals Council denied Plaintiff's request for review. (T. 1). Plaintiff commenced this proceeding on February 21, 2024, to challenge the Commissioner's denial of disability benefits by filing a complaint. (Dkt. 1).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standards

To be considered disabled, plaintiffs seeking DIB or Supplemental Security Income benefits must establish that they are "unable to engage in any substantial

---

[2] All page references are to the Administrative Transcript ("T.") and not the page numbers assigned by the CM/ECF pagination system.

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . ..″ 42 U.S.C. § 1382c(a)(3)(A).  In addition, plaintiffs'

> physical or mental impairment or impairments [must be] of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [they] live[], or whether a specific job vacancy exists for [them], or whether [they] would be hired if [they] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [they are] not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [their] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [them] disabled without considering vocational factors such as age, education, and work experience . . .. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [they have] the residual functional capacity to perform [their] past work.  Finally, if the claimant is unable to perform [their] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  Plaintiffs have the burden of establishing disability at the first four steps.

3

If they establish that their impairment prevents them from performing their past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, courts must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *See Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *see also Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* But this standard is a very deferential standard of review "—even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, reviewing courts consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, reviewing courts may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

ALJs are not required to explicitly analyze every piece of conflicting evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir.

1983); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). But ALJs cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *see also Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. **FACTS**

Plaintiff, Autum L., has a long history of physical and mental ailments predating the onset date. In August of 2016, Plaintiff went to the emergency room after having thoughts of running her car off the road into a river. (T. at 431). During her time in the emergency room, Plaintiff reported having bipolar I disorder (a diagnosis she received in March of 2016), suicidal ideation, and depressive symptoms. (*Id.*). Likewise, in 2018, Plaintiff had a strangulated hernia post bypass surgery, the post-operation wound would not heal, there was drainage from the open wound, and a suture was found in it. (*Id.* at 485 – 502). That same year, medical professionals treated Plaintiff for endometriosis. (*Id.* at 597).

Similarly, Plaintiff has an extensive history of physical and mental post-onset-date ailments. On March 26, 2019, Plaintiff entered Four Winds Psychiatric Hospital with, among other things, major depressive disorder and borderline

personality disorder (*Id.* at 518-519). She was discharged on April 4. (*Id.* at 559).[3]

That same year, Plaintiff visited her primary care provider with low back pain. (*Id.* at 245). She was later diagnosed with disc degeneration and treated with an epidural steroid injection, a right sacroiliac injection, a left sacroiliac injection, and left medial branch block injections in the L3-S1 disc levels (*Id.* at 596, 598, 600, 602). Plaintiff's next documented treatment for her mental health issues were December 2019, August 2020, March 2021, and November 2022. (T. 1493)

The record includes Plaintiff's physical and mental health treatment history. Rather than summarizing the medial records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV. THE ALJ'S DECISION

As an initial matter, the ALJ determined that Plaintiff met the insured status requirements through March 31, 2020. (T. 24). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment since March 25, 2019, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar degenerative disc disease; history of endometriosis; obesity; depressive disorder; and anxiety disorder. (*Id.* at 26). At the same step, the ALJ

---

[3] Plaintiff contends that she obtained treatment from Citizen Advocates between May 3, 2019, and May 24, 2020. (Plaintiff's Brief, Dkt. 11, pg. 7). While there are no medical records to that effect, Plaintiff stated to counsel that she remembers receiving regular treatment at Citizens Advocates during that period. (Plaintiff's Reply, Dkt. 14, pg. 2 fn. 1).

determined that Plaintiff's 2017 Roux-en-Y gastric bypass surgery, history of hernia, and cholecystectomy with post-operation abdominal pain and slow wound healing were non-severe impairments. (*Id.*). As more fully discussed below, the ALJ did not consider Plaintiff's bipolar I disorder, borderline personality disorder, or PTSD. (*Id.*).

At step three, the ALJ determined that Plaintiff's impairments, whether considered singly or in combination, did not meet or medically equal the criteria for any listed impairment in Appendix 1 to 20 CFR Part 404, Subpart P. (T. 25).

Next, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [they] can perform simple, routine, repetitive work in [an] environment with few, if any, workplace changes; can have occasional interaction with supervisors, coworkers and [the] public; never climb ladders, ropes, or scaffolds; and can occasionally climb stairs and ramps, and crouch.

(T. 28).

In making the RFC determination, the ALJ stated that they considered all of Plaintiff's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. (T. 28). The ALJ further noted that they considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. (T. 29). After considering the remaining record evidence, the ALJ

concluded that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record …" (T. 29).

At step four, the ALJ, relying on the impartial vocational expert's testimony, found that Plaintiff was unable to perform past relevant work. (*Id.* at 33). Finally, at step five of the sequential analysis, the ALJ found that there are a "significant" number of jobs in the national economy that Plaintiff could do. (*Id.*). Accordingly, the ALJ determined that Plaintiff was not disabled, as defined in the Social Security Act, from the onset date through the decision date. (*Id.*).

## V. **ISSUES IN CONTENTION**

Plaintiff argues that the ALJ's decision should be reversed and remanded for five reasons: (1) The ALJ failed to develop the record, (2) the ALJ erred by not considering Plaintiff's bipolar I disorder, PTSD, and borderline personality disorder at steps two and four; (3) the ALJ failed to properly evaluate the opinion of their own examining medical sources; (4) the ALJ erred in their RFC finding; and (5) the ALJ erred by not crediting Plaintiff's testimony about her limitations.

On the other hand, the Commissioner contends that the ALJ's determination should be affirmed because it is supported by substantial evidence and is free of legal error. (Defendant's Brief, Dkt. 13, pg. 1).

For the reasons stated below, the Court agrees with Plaintiff that the ALJ's failure at step two—to assess whether her bipolar I disorder, PTSD, and borderline personality disorder were severe impairments—warrants remand.

## VI. DISCUSSION

### A. Legal Standard

ALJs, at step two, must determine whether claimants have a "'severe impairment' which significantly limits their physical or mental ability to do basic work activities." *See Berry*, 675 F.2d at 467 (2d Cir. 1982). A severe impairment is an impairment that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities). "'Severity' is determined by the limitations imposed by an impairment, and not merely by its diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe." *Laura D. v. Comm'r of Soc. Sec.,* No. 5:21-CV-445 (LEK/TWD), 2022 WL 4181570, at *6 (N.D.N.Y. Sept. 13, 2022), *report and recommendation adopted*, 2022 WL 4591841 (N.D.N.Y. Sept. 30, 2022) (citations omitted). The claimant bears the burden of presenting evidence to

establish severity. *See* 20 C.F.R. § 404.1512(c). But once they do, the ALJ must determine whether the limitation is, or is not, severe. *See Berry*, 675 F.2d at 467 (2d Cir. 1982).

**B. Analysis**

The ALJ never addressed Plaintiff's bipolar I and borderline personality disorders in step two.[4] Plaintiff's bipolar I and borderline personality disorders diagnosis littered the record. To start, Plaintiff was diagnosed with bipolar disorder in March 2016. (T. 441). And she was treated for this disorder at Citizen Advocates (T. 1220). This diagnosis was later confirmed by Drs. Wassef, Hartman, Deneen. (T. 635, 658, 754). Likewise, all three doctors diagnosed Plaintiff with borderline personality disorder. (T. 635, 658, 754). Plaintiff's borderline personality disorder diagnosis is also supported by Plaintiff's mental health treatment records from Citizen Advocates, Inc. (T. 1205, 1213). *Alberalla v. Colvin*, No. 13-CV-881-RJA, 2014 WL 4199689 * 14 (W.D.N.Y. Aug. 22, 2014), *report and recommendation adopted,* No. 13-CV-881A, 2014 WL 5361950 (W.D.N.Y. Oct. 21, 2014) (Finding that an "impairment should have been considered" when "multiple diagnosis … could be found in the administrative record.").

---

[4] Plaintiff's initial allegations of impairments do not include PTSD. As a result, that disorder will not be included in the analysis.

Plaintiff's symptoms support the diagnoses. Plaintiff's records from Citizens Advocates show that she suffers from suicidal ideation and changes in appetite, while the assessment from Dr. Hartman shows that Plaintiff awakens about three times per night and needs medicine to fall asleep. (T. 656, 1354, 1401); *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (noting that the Bipolar I Disorder symptoms and signs includes, among other things, suicidal ideation, sleep disturbances, and changes in appetite).[5] Dr. Hartman's evaluation of Plaintiff also shows that she has difficulty trusting people and Dr. Deneen's evaluation of Plaintiff shows she becomes nervous in crowds or when she leaves the house, and she regularly stays inside her home. (T. 656, 754); *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (noting that the borderline personality disorder symptoms and signs includes, among other things, patterns of distrust, suspiciousness, and social detachment). And, while there are up and downs in Plaintiff's mental health history, that is not a reason to ignore it. Indeed, "ups and downs" are "the nature of bipolar disorder." *Faure v. Comm'r of Soc. Sec.,* 685 F. Supp. 3d 247, 262 (S.D.N.Y. 2023).

Plaintiff's bipolar I and borderline personality disorder limited her ability to perform work. According to Dr. Hartman Plaintiff has: (1) "marked difficulty using reason and judgment[;]" (2) "marked difficulty interacting adequately with

---

[5] The Court in *no way*, endorses the strength of Plaintiff's claim. To be clear: the purpose of noting the record evidence which may support Plaintiff's claim is to note that there is record support for Plaintiff's claim and the ALJ needed to address in its decision.

11

other[;]" (3) "marked to extreme difficultly sustaining an ordinary routine due to mood swings[;]" and (4) "marked to extreme difficulty regulating her emotions." (T. 658). As a result, Dr. Hartman concluded that Plaintiff's "psychiatric problems" are likely to "significantly interfere with functioning." (T. 658). Likewise, but to a lesser degree, Dr. Deneen found Plaintiff to have moderate limitations with regulating emotions, control behavior, and maintaining her well-being. (T. 754). Even the ALJ noted that Plaintiff has a "history of mental health treatment and psychological hospitalization, suggesting that her impairments impose greater limitations than found by Dr. Deneen during a one-time evaluation." (T. 27).

Yet, with all this evidence, the ALJ never addressed Plaintiff's bipolar I and borderline personality disorders at step two. The ALJ's RFC analysis did not contain any direct references to bipolar I or borderline personality disorder. (*See generally* T. 22-34). In fact, the decision never mentions either disorder. (*Id.*). As a result, the ALJ's failure to address the severity of Plaintiff's bipolar I and borderline personality disorders is reversable error. *See Sullivan v. Berryhill*, No. 3:17-CV-1524 (MPS), 2018 WL 6075671 (D. Conn. 2018) (finding that the ALJ's error to consider plaintiff's neuropathy at step two required remand); *see also Bradley o/b/o C.B. v. Berryhill,* No. 1:14-CV-01072 (MAT), 2017 WL 8287642 at *2 (W.D.N.Y. 2017) (reversing the ALJ's decision where "[t]he ALJ was …

indisputably aware that these impairments needed to be assessed as part of the disability determination" but "failed to discuss" them " at step two, resulting in clear legal error."). And because no reader can tell if the ALJ's opinion, *excluding* step two, accounts for Plaintiff's bipolar I and borderline personality disorders— contrary to the Commissioner's argument— this Court cannot determine that the ALJ's decision was supported by substantial evidence. *Id* at *4. ("This Court cannot determine, as a matter of law, that a proper consideration of" Plaintiff's "additional medically determination impairments would have had no effect on the analysis of" Plaintiff's limitations.").

    As a result, the Court reverses and remands the ALJ's decision.

    **WHEREFORE**, based on the findings above, it is

    **ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. 11) be **GRANTED**; and it is further

    **ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 13) be **DENIED**; and it is further

    **ORDERED**, that the decision of the Commissioner be **REVERSED**, and **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum-Decision and Order.

Dated: March 10, 2025

                                          Hon. Mitchell J. Katz
                                          U.S. Magistrate Judge